HARRIS COUNTY, Texas, Petitioner,

v.

Lynn SMITH, Erica Smith, Individually and as next friend of Hasasha Smith and Lynn Smith, Jr., Respondents.

No. 01–0531.

Supreme Court of Texas.

Argued Sept. 11, 2002.

Decided Dec. 19, 2002.

Rehearing Denied Feb. 27, 2003.

Michael A. Stafford, Harris County Attorney, Cedric K. Loeb, Harris County Attorney's Office, Sandra D. Hachem, Harris County Assistant Attorney, Houston, for Petitioner.

Willie High Coleman, Bates & Coleman, P.C., Houston, for Respondents.

Chief Justice PHILLIPS delivered the Opinion of the Court joined by Justice HECHT, Justice OWEN, Justice JEFFERSON, and Justice SMITH.

In this case we must decide whether the trial court committed harmful error by submitting a broad-form question on damages that included an element without any evidentiary support. The court of appeals found no harm because the jury's award could have reasonably been based on other elements of damage for which there was evidentiary support. 66 S.W.3d 326, 336–38. We conclude that the error was harmful because the trial court's charge error "probably prevented the petitioner from properly presenting its case to the appellate courts." Tex.R.App. P. 61.1(b). We therefore reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

I

Lynn Smith and Erica Smith, individually and as next friend for the Smith's two minor children, sued for injuries they sustained when their automobile collided with a patrol car driven by Harris County Deputy Sheriff Robert Spurgeon. At trial, the court submitted two broad-form damage questions predicated on a finding that the deputy sheriff was negligent. Each damage question instructed the jury that it could consider various elements of damage in awarding a single amount to a party. Question 3 stated that when determining Lynn Smith's damages, if any, the jury could consider:

a. Physical pain and mental anguish.

b. Loss of earning capacity.

c. Physical impairment.

d. Medical care.

Harris County objected to this issue, asking the trial court to submit each damage element separately. After the court denied this request, Harris County specifically objected that there was no evidence of "loss of earning capacity" as an element of Mr. Smith's damages. The court over-

ruled the objection, and the jury awarded Mr. Smith $90,000.00.

Jury Question 4 instructed the jury that when determining Erica Smith's damages, if any, it could consider the following elements:

a.  Physical pain and mental anguish.

b.  Physical impairment.

c.  Medical care.

Harris County also objected to this question, claiming that there was no evidence that Mrs. Smith had sustained any physical impairment. The trial court overruled the objection, and the jury awarded Mrs. Smith $3100 in damages.

The trial court rendered judgment against both Harris County and the deputy sheriff on the jury's verdict, which also included a $1000 award for each of the children. Harris County appealed as to Mr. and Mrs. Smith only, its sole complaint being that the trial court erred in submitting damages in Questions 3 and 4. The deputy sheriff did not appeal. The court of appeals agreed that the trial court erred in submitting loss of earning capacity as to Mr. Smith and physical impairment as to Mrs. Smith, but it concluded that the error was harmless because there was ample evidence on properly submitted elements of damage to support the jury's awards to both plaintiffs. 66 S.W.3d at 335. In reaching its judgment, the court of appeals relied on our decision in *Thomas v. Oldham*, 895 S.W.2d 352 (Tex.1995), and distinguished our holding in *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378 (Tex.2000). 66 S.W.3d at 333–34. Because we believe the present case is closer to *Casteel* than to *Thomas*, we reverse the court of appeals' judgment and remand to the trial court for the reasons stated below.

## II

■ In *Thomas*, a broad-form damage question asked the jury to consider five separate elements in arriving at a single damage amount. The defendant did not object to the broad-form submission. In reaching its verdict, the jury made notations in the margin next to each of the five elements of damage. These notations totaled $500,000, which was the amount of the verdict. On appeal, the defendant challenged the verdict, arguing that there was no evidence to support the amounts noted by the jury on two of the five elements. We rejected the argument, observing that the jury's margin notations were not in legal effect "separate damage awards for purposes of evidentiary review." *Thomas*, 895 S.W.2d at 359. We further said that because the defendant had not asked for separate damage findings, it could only challenge the legal sufficiency of the evidence supporting the whole verdict. *Id.* at 360. Because the defendant did not make this argument, we rejected its evidentiary challenge. *Id.*

In this case, on the other hand, Harris County did object to the charge. Harris County pointed out to the trial court that particular elements of damage had no support in the evidence and should not be included in the broad-form question. The objection was timely and specific. It was also correct, and the trial court clearly erred when it did not sustain the objection and correct the charge.

The court of appeals did not believe that Harris County's objection to the charge should make any difference in the disposition, but we disagree. We further disagree with the court of appeals' application of *Casteel*.

## III

■ In *Casteel*, we ruled that when a single broad-form liability question com-

mingles valid and invalid liability grounds and the appellant's objection is timely and specific, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an invalid theory. The court of appeals had concluded in the case that the trial court's submission, although error, was harmless because one or more of the valid liability theories were supported by sufficient evidence. Casteel v. *Crown Life Ins. Co. v.* 3 S.W.3d 582, 594–95 (Tex. App.-Austin 1997), *rev'd and remanded,* 22 S.W.3d 378 (Tex.2000). We disagreed, concluding that the error was harmful because the erroneous submission, over timely objection, affirmatively prevented the appellant from isolating the error and presenting its case on appeal. We held that:

> [W]hen a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory. *See* Tex.R.App. P. 61.1 ("No judgment may be reversed on appeal ... unless the Supreme Court concludes that the error complained of ... probably prevented the petitioner from properly presenting the case to the appellate courts."); *see also* Tex.R.App. P. 44.1(a).

*Casteel,* 22 S.W.3d at 388.

The court of appeals in this case concluded that *Casteel* applied only to "key issues" such as the submission of an invalid liability theory. 66 S.W.3d at 334. It did not extend to damages because, according to the court of appeals, a jury was less likely to include an invalid element of damage in its verdict than it was to rely on an invalid theory of liability. *Id.* at 334–35; *see also* Dorsaneo, *Broad–Form Submission of Jury Questions and the Stan-*

*dard of Review,* 46 SMU L.Rev. 601, 630 (1992) (suggesting that it is reasonable to presume that the jury will notice when there is no evidence to support an element of damage, but will not know that a liability theory is invalid). The court then concluded that the erroneous inclusion of an invalid element of damage was harmless, even when identified by timely objection, so long as there was sufficient evidence of other elements in the broad-form question on which the jury could have reached its verdict. 66 S.W.3d at 336–38.

Harris County argues, however, that *Casteel's* harmful error analysis is not confined to questions of liability. A trial court's error in instructing a jury to consider erroneous matters, whether an invalid liability theory or an unsupported element of damage, prevents the appellant from demonstrating the consequences of the error on appeal. Harris County directs our attention to two courts of appeals' decisions that, contrary to the court below, apply *Casteel's* reasoning to broad-form damage questions. *See Wal–Mart Stores, Inc. v. Redding,* 56 S.W.3d 141, 154–55 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (harmful error to submit over timely objection a broad-form damages question that mixes valid and invalid measures of damages); *Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.,* 42 S.W.3d 149, 157 (Tex.App.-Amarillo 2000, no pet.) (same); *see also In re J.M.M.,* 80 S.W.3d 232, 248 n. 6 (Tex.App.-Fort Worth 2002, pet. denied) (not reaching the issue of whether *Casteel* applies to broad-form damages but recognizing conflict in courts of appeals).

In *Casteel,* we reaffirmed our reasoning in *Lancaster v. Fitch,* 112 Tex. 293, 246 S.W. 1015 (1923), where this Court recognized the inherent harm to the administration of justice caused by mixing valid and invalid liability theories in a single broad-

form liability question. *Casteel,* 22 S.W.3d at 389. The same year we decided *Lancaster,* we applied its reasoning to a similar situation involving a broad-form damages question. *See Eastern Tex. Elec. Co. v. Baker,* 254 S.W. 933, 934–35 (Tex.1923). In *Eastern Texas Electric,* the trial court submitted a single broad damage issue and instructed the jury to consider past and future mental and physical pain in awarding damages even though there was no evidence of future physical pain. The court of appeals held that the trial court had erred in instructing the jury to consider future pain but concluded that the error was harmless because evidence of past mental and physical pain was sufficient to support the award. This Court reversed, concluding that the harmless error standard "was not intended to deprive a party to a suit of a substantial right," namely, "the right to have the damages assessed against it by the jury under proper instructions submitting only the elements of damage as raised by the pleadings, and supported by evidence." *Id.* at 934. Because it was "not possible for an appellate court to say the jury did not consider this erroneous charge in arriving at the amount of damage," this Court reversed and remanded for a new trial, citing *Lancaster. Id.* at 935.

■ Just as in 1923, a litigant today has a right to a fair trial before a jury properly instructed on the issues "authorized and supported by the law governing the case." *Casteel,* 22 S.W.3d at 389 (quoting *Lancaster v. Fitch,* 246 S.W. at 1016). We conclude that the trial court erred in overruling Harris County's timely and specific objection to the charge, which mixed valid and invalid elements of damages in a single broad-form submission, and that such error was harmful because it prevented the appellate court from determining "whether the jury based its verdict on an improperly submitted invalid" element of damage. *Casteel,* 22 S.W.3d at 388; *see also* TEX.R.APP. P. 61.1(b).

## IV

Instead of *Casteel,* the dissent urges that we follow the United States Supreme Court's decision in *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), and hold the charge error in this case to be harmless. In *Griffin,* the Court considered whether a charge in a criminal case, allowing the jury to find guilt under either of two counts, only one of which had support in the evidence, violated the due process clause. The Court held it did not, following over a century of criminal jurisprudence. *Id.* at 49–51. *Griffin* did not make any new criminal law, nor did it purport to extend its view of constitutional requirements to civil procedure. The dissent here acknowledges as much, but nevertheless suggests that *Griffin's* logic should apply equally in state civil procedural questions as in federal constitutional law. 96 S.W.3d at 233 (O'Neill, J. dissenting). But the United States Supreme Court itself has acknowledged that a different reversible error analysis applies in civil cases. *See Maryland v. Baldwin,* 112 U.S. 490, 493, 5 S.Ct. 278, 28 L.Ed. 822 (1884); *see also Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.,* 370 U.S. 19, 29–30, 82 S.Ct. 1130, 8 L.Ed.2d 305 (1962); *United N.Y. & N.J. Sandy Hook Pilots Assoc. v. Halecki,* 358 U.S. 613, 618–19, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959); *Wilmington Star Mining Co. v. Fulton,* 205 U.S. 60, 78–79, 27 S.Ct. 412, 51 L.Ed. 708 (1907).

Our rules of appellate procedure set out two conditions upon which a judgment may be reversed for an error of law. *See* TEX. R.APP. P. 61.1; *see also* TEX.R.APP. P. 44.1 The first is an error which "probably

caused the rendition of an improper judgment." TEX.R.APP. P. 61.1(a). The second is an error which "probably prevented the petitioner from properly presenting the case to the appellate courts." TEX.R.APP. P. 61.1(b). Focusing only on the first condition, the dissent suggests that we must presume harm here in order to reverse. We disagree. Just as in *Casteel*, the trial court's charge error in this case caused actual harm because it prevented Harris County from properly presenting its case to the appellate courts. TEX.R.APP. P. 61.1(b). In this regard, the case is no different from *Casteel*.

Finally, the dissent decries our decision today as the end of broad-form submission, suggesting that parties will inevitably misapply our reasoning to charge objections that complain about "potential" errors, such as the factual insufficiency of the evidence. Here, of course, we have actual error in the charge, not an imagined or potential one. More importantly, our decision is not a change in recommended broad-form practice. Comments to the Texas Pattern Jury Charges have long recommended that damage elements should be submitted separately "if there is substantial doubt as to whether there is evidence to support" an element. COMM. ON PATTERN JURY CHARGES, 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 11.03 cmt. (1969); *see also* COMM. ON PATTERN JURY CHARGES, 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 7.02 cmt. (2d ed.1987). The Texas Pattern Jury Charge presently suggests: "The use of a separate answer line for each element of damages might avoid the need for a new trial if the appellate court finds that one or more, but not all, of the elements lack legal or evidentiary support." COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES-GENERAL NEGLIGENCE PJC 8.2 cmt. (2000). Today's decision will change the practice only of those lawyers and judges who have heretofore disregarded the PJC's advice on this question.

V

Neither our decision today nor *Casteel* is a retrenchment from our fundamental commitment to broad-form submission. This Court began moving toward modern broad-form practice in 1973, when we amended Texas Rule of Civil Procedure 277 to abolish the requirement that issues be submitted separately and distinctly, thereby granting trial courts the discretion to submit issues broadly. Over the years, we have repeatedly expressed our general preference for broad-form submission. *See Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663–64 (Tex.1999); *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990); *Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984). Our current rule, amended in 1988, more strongly reflects our preference for broad-form questions, mandating that the "court shall, whenever feasible, submit the cause on broad-form questions." TEX.R. CIV. P. 277.

When properly utilized, broad-form submission can simplify charge conferences and provide more comprehensible questions for the jury. *See Hyundai Motor*, 995 S.W.2d at 664. But we recognize that it is not always practicable to submit every issue in a case broadly. As Professors Muldrow and Underwood observe, "broader is not always better." Muldrow & Underwood, *Application of the Harmless Error Standard to Errors in the Charge*, 48 BAYLOR L.REV. 815, 853 (1996). For example, we have suggested that broad-form submission may not be feasible when the governing law is unsettled. *See Westgate, Ltd. v. State*, 843 S.W.2d 448, 455 n. 6 (Tex.1992). In such an instance, submitting alternative liability standards permits the appellate court to settle the law and

render the correct judgment. Similarly, it would be contrary to judicial economy to insist on broad-form submission when a specific objection raises substantial concern that a particular theory of liability will infect the proposed broad-form question with error. *See Casteel*, 22 S.W.3d at 390. And in a case such as this one, asking the jury to record its verdict as to each element of damages when there is doubt as to the legal sufficiency of the evidence will permit the losing party to preserve error without complicating the charge or the jury's deliberations. *See* TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE PJC 8.2 cmt.; *see also Muldrow & Underwood*, supra, at 855.

◼ Whether a granulated or broad-form charge is submitted, the trial court's duty is to submit only those questions, instructions, and definitions raised by the pleadings and the evidence. *See Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992); see also TEX.R. CIV. P. 278. But using the harmless error rule to permit the indiscriminate mixture of valid and invalid liability theories or damage elements, without recourse, undermines a party's incentive to request legally correct definitions, instructions, and questions. In fact, it has been suggested that harmful error analysis like that by the court of appeals here rewards the party who invited the charge error in the first place:

> [T]he trial court's submission of a defective charge can actually become a winning proposition. A party can safely request a legally defective charge provided that proper theories of liability are broadly submitted with improper theories or proper elements of damage are broadly submitted with improper elements. The jury might find in the requesting party's favor based entirely on the improper theory of liability or element of damage. Yet, as long as the jury could have found in that party's favor based on a proper theory or element, the appellate court will affirm. The party who invited error would be rewarded for doing so.

Muldrow & Underwood, supra, at 851 (footnote omitted). These authorities also submit that this analysis "undermines the role that appellate courts serve as safeguards against arbitrary conduct by trial courts." *Id.*

A litigant should not be powerless to require the trial court to fulfill its duty of submitting only those questions and instructions having support in the pleadings and evidence. A timely objection, plainly informing the court that a specific element of damages should not be included in a broad-form question because there is no evidence to support its submission, therefore preserves the error for appellate review. *See* 34 HODGES & GUY, TEXAS PRACTICE: THE JURY CHARGE IN TEXAS CIVIL LITIGATION § 40, at 38–39 (2d ed. supp. 2001) (discussing appellate review of errors masked by broad-form submission and urging that timely objection to the charge should preserve error for review); *see also State Dep't of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex.1992) (test for preservation is whether "party made the trial court aware of the complaint, timely and plainly, and obtained a ruling"). We hold that *Casteel's* reasoning applies equally to broad-form damage questions, and under its rationale we conclude that the charge error in this case was harmful. The court of appeals' judgment is reversed and the cause is remanded to the trial court for further proceedings.

Justice O'NEILL filed a dissenting opinion, joined by Justice ENOCH and Justice HANKINSON.

Justice SCHNEIDER did not participate in the decision.

Justice O'NEILL dissenting, joined by Justice ENOCH and Justice HANKINSON.

Erica Smith incurred $2,024.83 in medical expenses, and suffered physical pain and mental anguish for which Harris County argued to the jury she should receive $1,000. The jury awarded her $3,100, just $75.17 more than Harris County admitted would be appropriate for her injuries. Lynn Smith's past and estimated future medical expenses totaled $62,427. He testified that his pain was severe, and his doctor testified that even after corrective surgery he would be unable to sit for more than short periods of time. The jury awarded him $90,000. Harris County does not contend that the evidence is legally insufficient to support the total amount of the plaintiffs' damages. Nevertheless, because one unsupported damage element was included in each plaintiff's broad-form jury charge, the Court *presumes* reversible harm. *See* 96 S.W.3d at 234. To do so the Court must assume, contrary to longstanding precedent, that the jury failed to follow the trial court's instructions. But worse, the Court's decision is sure to encourage granulated and confusing jury charges, the very problem broad-form submission was designed to prevent. Because the Court today takes a giant step backward in charge-error jurisprudence, I respectfully dissent.

**I**

Our appellate rules contemplate that judgments will only be reversed when it is shown that the alleged error

(a) probably caused the rendition of an improper judgment; or

(b) probably prevented the petitioner from properly presenting the case to the appellate courts.

TEX.R.APP. P. 61.1; *cf.* TEX.R.APP. P. 44.1. Harris County does not complain that the

submission of an unsupported damage element in each plaintiff's broad-form charge probably caused the rendition of an improper judgment in this case. That is because there was ample evidence to support the jury's damage award under the other elements submitted. Rather, Harris County and the Court seize upon subsection (b), which requires reversal if the broad-form damage submission probably prevented Harris County from properly presenting its case on appeal.

The Court determines that Harris County's appeal is not properly presentable because the jury might have based a portion of its award on a damage element that lacked evidentiary support—we just can't tell. But certainly we can. In this case, the jury was asked:

What sum of money ... would fairly and reasonably compensate [each plaintiff] for [his or her] damages, *if any*, resulting from the occurrence in question?

Consider the elements of damages listed below and none other. ***Consider each element separately.*** Do not include damages for one element in any other element.

(Emphasis added). The jury was specifically instructed to consider each damage element separately and to award damages only for those particular types of injury that the plaintiffs suffered. We have long held that "[a]n appellate court must assume that a jury properly followed the trial court's instructions." *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex.1982); *see also Phillips v. Phillips*, 820 S.W.2d 785, 787 n. 2 (Tex.1991); *Lancaster v. Fitch*, 112 Tex. 293, 246 S.W. 1015, 1016 (Tex.1923). Only by presuming the opposite, that the jury *disregarded* the trial court's instructions, can the Court conclude that the broad-form damage question here prevented

Harris County from properly presenting its appeal. 96 S.W.3d at 234.

Even apart from the charge's specific language in this case, the Court's analysis glosses over a distinction that is critical in determining an erroneous submission's harmful effect. Generally, a jury question can be erroneous for two reasons: (1) it fails to conform to the substantive law, and thus submits an invalid legal theory; or (2) it contains a valid legal theory, but there is no evidence to support its submission to the jury. In *Crown Life Insurance Co. v. Casteel,* 22 S.W.3d 378, 388 (Tex.2000), we confronted the former situation. There, the broad-form jury question commingled fourteen liability theories, four of which could not provide a basis for recovery because the plaintiff was not a consumer under the DTPA. 22 S.W.3d at 386–87. We noted that the jury "was given no indication that Casteel was required to be a consumer to succeed under any of [the liability theories]," and held that a single broad-form liability question that erroneously commingles valid and invalid liability theories is harmful "when it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding." *Id.* at 389. Our decision was based on the notion that "[i]t is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law." *Id.* at 388. Thus, we determined it "essential that the theories submitted be authorized and supported by the law governing the case." *Id.* at 389. Just as we have recognized that "a judgment cannot be permitted to stand when a party is denied proper submission of a valid theory of recovery or a vital defensive issue," *Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex.1992) (citing *Texas & P. Ry. Co. v. Van Zandt,* 159 Tex. 178, 317 S.W.2d 528, 530 (1958)), we recognized in *Casteel* that a jury's liability assessment is necessarily bound by the substantive law. 22 S.W.3d at 388–89; *see also Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 529 (Tex.1995). We did not abandon Rule 61.1's standard for reversible error, but adhered to the governing principle that parties should only be held liable on valid legal grounds. *See* Tex.R.App. P. 61.1.

This distinction between a broad-form submission that is unsupported by the substantive law, as presented in *Casteel,* and one that presents an element or theory that lacks evidentiary support, as presented in this case, has been recognized by the United States Supreme Court, by legal commentators, and by our own rules of civil procedure. In *Griffin v. United States,* 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), the Court observed:

> Jurors are not generally equipped to determine whether a particular theory ... submitted to them is contrary to law.... When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence.

Although *Griffin* was a criminal case, I see no logical reason why this underlying premise should not apply in the civil context. Neither do legal commentators, who have recognized a logical distinction between technical legal deficiency, which is beyond the jury's realm of competence to recognize or correct, and evidentiary deficiency, which is uniquely within a jury's province:

> [i]t is ordinarily reasonable to presume that the jury reached its decision by considering the damage elements having

support in the evidence.... In other words, even if there is no evidence or insufficient evidence of some element or elements of damages pleaded, there is a principled and sensible basis for concluding that there is no reversible error if the overall damage award is not excessive.

Dorsaneo, *Broad–Form Submission of Jury Questions and the Standard of Review*, 46 SMU L.REV. 601, 630 (1992). Our own rules of civil procedure governing jury instruction recognize the distinction between legal and evidentiary deficiency:

(I) ... Your duty as jurors will be to decide the disputed facts. It is the duty of the judge to see that the case is tried in accordance with the rules of law....

(II) ... It is your duty to consider the evidence and to determine fact issues ... but I, as judge, will decide matters of law.

TEX.R. CIV. P. 226a.

The Court extends *Casteel's* presumed harm analysis beyond the commingling of valid and invalid liability theories to the commingling of legally valid damage elements, only one of which, in this case, lacks support, presumably because it considers insufficiency of proof akin to legal error. But I agree with the United States Supreme Court that this is "a purely semantical dispute":

It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.

*Griffin*, 502 U.S. at 59–60, 112 S.Ct. 466 (quoting *United States v. Townsend*, 924 F.2d 1385, 1414 (1991)).

Painting with a broad brush, the Court posits no circumstances in which the commingling of elements with and without evidentiary support would allow the appellate court to determine whether the jury's verdict was based on an unsupported element. If the present case does not pass muster, I find it hard to imagine a case in which the submission of any unsupported element, or instruction for that matter, will not require reversal. Despite the Court's purported "commitment" to broad-form submission, its decision will undoubtedly resurrect the granulated and confusing charges that we long ago abandoned. Cautious counsel will feel compelled to request granulated questions if, in the Court's own words, there is "doubt as to the legal sufficiency of the evidence...." 96 S.W.3d at 236. This reasoning would apply equally to any doubts about factual sufficiency, or if a plaintiff wishes to preserve a challenge to a potential zero-damage award for a particular damage element. This approach severely undermines the strong preference for broad-form submission reflected in our rule's mandate to the trial courts that they "shall, whenever feasible, submit the cause upon broad-form questions." TEX.R. CIV. P. 277.

This retrenchment is unfortunate. The use of broad-form submission when feasible is important to the efficient functioning of our judicial system. Before 1973, our rules required trial courts to submit "each issue distinctly and separately." *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 648 (Tex.1990). We adopted the current version of Rule 277 to eliminate many ill effects of the former special-issues practice, under which appeals proliferated because of inevitable conflicts in jury answers. *See E.B.*, 802 S.W.2d at 649. The broad-form rule was intended to increase our judicial system's efficiency by reducing the number of appeals and retrials. *Id.* The rule further "expedite[d] trials by sim-

plifying the charge conference and making questions easier for the jury to comprehend and answer." *Id.* Our adoption of Rule 277 was a deliberate choice, made in full recognition that it would be harder for litigants to successfully appeal:

> The tension between presumed harm and harmless error has always been one of competing ideals—errorless trials versus judicial economy and finality. And the decision was made, long ago, after a protracted struggle, that the balance should be struck in favor of the latter.

*Gilbreath & Cukjati, Crown Life Ins. Co. v. Casteel—Return of the Prodigal Son,* THE APPELLATE ADVOCATE 5, 8 (2000) (citing Calvert, *The Development of the Doctrine of Harmless Error in Texas,* 31 TEX. L.REV. 1 (1952)); *see* RATLIFF ET AL., TEXAS COURTS: TRIAL & APPEAL 275 (7th ed.2001–2002); *see generally* HODGES & GUY, THE JURY CHARGE IN TEXAS CIVIL LITIGATION (2d ed. 1988 & Supp.1993); WRIGHT & MILLER, 9 FEDERAL PRACTICE & PROCEDURE § 2505, at 496 (1988 & Supp.1993). Despite the Court's protestations to the contrary, I fear that today's decision signals a "retreat to the muck and mire of 'separate and distinct' special issues." *Sampson, TDHS v. E.B.: The Coup de Grace for Special Issues,* 23 ST. MARY'S L.J. 221, 260 (1991).

The trial court's error in this case did not probably cause an improper judgment, nor does it prevent us from properly considering Harris County's evidentiary challenge on appeal. Rather than presume harm because the broad-form damage questions included an unsupported element, I would apply a traditional harmless error analysis. Because there was ample evidence to support the jury's damage award under the properly submitted damage elements, I would affirm the trial court's judgment. Because the Court holds otherwise, I respectfully dissent.